HALSELL v. DRAINAGE DISTRICT No. 17, MISSISSIPPI COUNTY.

4-9163                                        227 S. W. 2d 136

Opinion delivered February 27, 1950.

*Marcus Evrard,* for appellant.

*Graham Sudbury,* for appellee.

ED. F. McFADDIN, Justice. The question, as stated in the briefs, is: "Has Drainage District No. 17 the power and authority to purchase a dragline and equipment to be used by the District in cleaning out and maintaining its drainage system?"

Drainage District No. 17 was created a Special District by Acts 103 and 261 of 1917. Later, by Act 227 of 1927, it received the additional powers possessed by general districts organized under Act 279 of 1909. Then, Act 95 of 1947 (See § 21-575, Ark. Stats., 1947) provided, *inter alia:*

"Boards of commissioners of drainage districts organized under the laws of Arkansas are hereby author-

ized upon petition of the majority of the property owners in their districts or upon petition of the owners of the majority of the property in their district to purchase, lease, or rent . . . machinery, equipment and material to be used in repairing, deepening, widening and clearing the ditches of their districts.''

Appellant, as a property owner, filed this suit for an injunction, alleging:

''Said Drainage District No. 17 is about to purchase, and is threatening to purchase, for use in connection with the maintenance and widening of its ditches, certain expensive equipment, consisting of a dragline, excavating machine and other heavy equipment, and to pay therefor out of the funds of the district raised by the taxation of the real estate within the district; all of which is about to be done without authority under the law and in violation of the provisions of Act No. 95 of the Acts of the General Assembly of the State of Arkansas for the year 1947. Unless it is restrained and enjoined from doing so, said district, acting through its Board of Directors, will purchase such equipment and will expend funds of the district, realized from the taxation of the real estate, in payment therefor.''

In its answer, the District admitted that it was about to make the purchases, as alleged, but asserted:

''Defendant District specifically denies that purchase of machinery contemplated by it would be in violation of provisions of Act 95 of the Acts of 1947.''

. . .

''Defendant District states that there is within said District 138,980 acres of land; that said District has received petitions, requesting the purchase of the machinery mentioned in plaintiff's complaint, signed by the owners of 75,389 acres, or 54.2 per cent of the lands within said District; . . . that said petitions therefore represent a majority in acreage within Defendant District. . . .''

The plaintiff demurred to the answer, and when the demurrer was overruled, the plaintiff refused to plead fur-

ther. Thereupon a decree was rendered dismissing the complaint, and this appeal followed.

Even though the parties have discussed other legislation as authority for the purchases contemplated by the District, we find it unnecessary to consider any legislation except Act 95 of 1947 because it is sufficient authority in itself for what the District proposes to do on petition of a majority in acreage of the District. The said Act provides that the Commissioners shall be authorized to purchase machinery, equipment, etc., "upon petition of the owners of the majority of the property in their District." The Act 95 of 1947 used the quoted words in the light of the law under which any district might have been organized that was seeking to invoke said Act. The words "owners of the majority of the property in their District" mean—as applied to District No. 17—the majority "either in numbers or in acreage or in value of the holders of real property"; because the general law under which this District operates (Act 279 of 1909, as amended, and now found in § 21-502, Ark. Stats., 1947) provides that the District could come into existence by a majority "either in numbers, or in acreage or in value."

No question is presented in this case as to bondholders. The answer of the District alleges that the Commissioners had a petition signed by a majority in acreage of the property holders in the District, so the Commissioners had the right to make the purchase under Act 95 of 1947; and this holding makes it unnecessary for us to consider whether the Commissioners had the authority under any previous legislative enactment.

Affirmed.